586 So.2d 1148 (1991)
Charles Kenneth ROGERS, Appellant,
v.
STATE of Florida, Appellee.
Shelly TAM, Appellant,
v.
STATE of Florida, Appellee.
Nos. 90-00622, 90-00633.
District Court of Appeal of Florida, Second District.
August 14, 1991.
Rehearing Denied October 10, 1991.
*1149 Thomas J. Donnelly, Clearwater, for appellants.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Erica M. Raffel, Asst. Atty. Gen., Tampa, for appellee.
PATTERSON, Judge.
We review the consolidated appeals of Charles Rogers and Shelly Tam who pled nolo contendere to charges of trafficking (Rogers) and possession (Tam) after the trial court denied their motions for suppression of the contraband found in Rogers' van and Tam's purse. Both appellants claim the officers who stopped Rogers' van had no founded suspicion to do so based solely on a tip received from an apparently untested informant. Tam further claims that the police had no probable cause to proceed with the search of her purse after the canine unit discovered contraband in the van itself. We conclude that the police did have a founded suspicion to stop the van; that this founded suspicion ripened into probable cause to search the van when the narcotic-sniffing dog alerted to the presence of cocaine; and that the discovery of the contraband in the van gave the officers *1150 probable cause to arrest the driver, Rogers. We find no basis for the arrest of Tam or the search of her purse. We therefore affirm as to Rogers and reverse as to Tam.

FACTS
The facts viewed in a light most favorable to the state, Young v. State, 579 So.2d 721 (Fla. 1991), are as follows: On February 11, 1989, Officer Kirchgraber of the St. Petersburg Beach Police Department spoke to an individual who was at that time under arrest at the St. Petersburg Beach police station. Officer Kirchgraber had had what he described as "prior dealings" with this individual, but this was the first occasion that the individual acted as an informant to the officer. Between 8:00 and 9:00 in the evening, the informant told the officer that a man named Rogers would be coming to St. Petersburg Beach that night sometime after 10:00 in a burgundy mini-van with a black bra on the front; that Rogers would go to El Gordo's Restaurant and would have one or more ounces of cocaine in white envelopes placed in the compartments behind the front seats of the van; and that Rogers' girlfriend, Tam, would be with him. During the officer's questioning, the informant admitted that he had not specifically seen Rogers in actual possession of cocaine that evening.
Based on this information, Officer Kirchgraber did a computer check and found that a 1985 Dodge van with a certain tag number was registered to Rogers and that Rogers had two previous narcotics convictions. The officer then arranged for a canine unit to be available and set up a surveillance at the restaurant.
The surveillance of the restaurant continued from about 10:00 p.m. to sometime after 11:30 p.m. with no sighting of the suspects. Since the police shift was changing, Officer Kirchgraber decided to terminate the surveillance. When the officer returned to the police station, the informant assured him that Rogers would show up because he had a friend playing in the band at the restaurant and always came to hear the friend play. The surveillance team returned to the restaurant. Five to ten minutes later a burgundy Dodge van sporting a black bra on the front entered the parking lot of the restaurant. Its tag matched the number on the registration check indicating it belonged to Rogers. After the van pulled into a parking space the police approached, identified themselves and their purpose, and asked all the occupants to exit. Upon asking for identification, the police determined that Rogers was the driver and that Tam was the frontseat passenger. Three other people, two women and a man, were found in the seatless rear portion of the van.
The police asked if they could search the van; Rogers refused. The canine unit was called in and arrived on the scene some twenty-five to thirty minutes later. During the wait for the arrival of the dog, the police asked Tam and the other two female passengers for permission to look into their purses. Tam refused to allow the police to search her purse. The other two passengers agreed to the search and the police found no illegal narcotics in either purse. When the canine unit arrived, the dog spontaneously jumped into an open door of the van and alerted to the presence of narcotics in the seat pocket attached to the back of the front passenger seat. The police then pulled out several white envelopes containing cocaine from the pocket behind each of the front seats. The police at this time arrested Rogers. Officer Kirchgraber then asked that Tam hand her purse over to him which she did. He discovered 29.5 grams of cocaine in Tam's purse and then arrested her for possession of that quantity.
The trial court held that the police had founded suspicion to stop the van and identify the appellants. The trial court further held that the discovery of the contraband in the van gave the police probable cause to arrest the appellants.

ROGERS' APPEAL
The known informant here provided detailed and specific information, although this was apparently the first time he had provided such information for the police to act upon. "The specificity of the information *1151 furnished, by itself, is insufficient to establish probable cause until validated by the officer's observations." State v. Abiri, 539 So.2d 492 (Fla.2d DCA 1989). See also, United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); State v. Flowers, 566 So.2d 50 (Fla.2d DCA 1990); Edwards v. State, 547 So.2d 183 (Fla.2d DCA 1989). Here, the police had independently corroborated most of the specific details of the informant's knowledge through their own surveillance and identification of the appellants and, significantly, developed additional important information about Rogers' criminal record through the computer check before starting the surveillance.
Although the appellants strenuously argue to the contrary, we do not find that the informant's tip had gone stale once the police gave up the surveillance after approximately an hour and a half, returning only upon the informant's assurance that further surveillance would be rewarded. See Abiri and State v. Augustyn, 490 So.2d 104 (Fla.2d DCA 1986). Rather, the careful police work here provided a well-founded suspicion to stop the van and question the occupants, as the trial court correctly concluded. Further, it was not unreasonable that the appellants were detained for approximately twenty-five minutes until the canine unit arrived at the scene. State v. Merklein, 388 So.2d 218 (Fla.2d DCA 1980); see also State v. Nugent, 504 So.2d 47 (Fla. 4th DCA 1987) (thirty-minute delay does not transform valid Terry stop into de facto arrest).
This founded suspicion ripened into probable cause to search when the canine unit alerted to the presence of contraband in the van. Moreland v. State, 552 So.2d 937, 939 (Fla.2d DCA 1989), review denied, 562 So.2d 346 (Fla. 1990). The officer's resulting discovery of the cocaine in the seat pockets provided probable cause to arrest the appellant Rogers. See Fedor v. State, 483 So.2d 42 (Fla.2d DCA), review denied, 492 So.2d 1331 (Fla. 1986).

TAM'S APPEAL
When asked, Tam, who was standing some distance from the vehicle, refused permission to search her purse. The K-9 dog did not alert to contraband on or about Tam's person. The informant, although stating that Tam would accompany Rogers, did not implicate her in the possession of contraband. There were no facts or circumstances which would give rise to probable cause that Tam had contraband in her immediate possession.
If the search of Tam's purse is to be upheld, it must be on the basis that the police officer had probable cause to arrest Tam for actual or constructive possession of the cocaine found in the van. As there are no facts to indicate actual possession on the part of Tam, we turn to the issue of constructive possession. For Tam to be in constructive possession of the cocaine found in the seat pockets of the van, she must: (1) know of the presence of the cocaine; (2) know of the illicit nature of the drug; and (3) have or share dominion and control over it. Mere proximity to contraband, standing alone, is insufficient to establish constructive possession of the substance. Agee v. State, 522 So.2d 1044 (Fla.2d DCA 1988); see Bass v. United States, 326 F.2d 884 (8th Cir.), cert. denied, 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964); Johnson v. State, 456 So.2d 923 (Fla.3d DCA 1984). In regard to passengers of vehicles, the following cases are representative of circumstances insufficient to establish constructive possession on the part of the passenger: Lewis v. State, 570 So.2d 346 (Fla.2d DCA 1990) (owner of car was passenger and cocaine not in plain view); McClain v. State, 559 So.2d 425 (Fla. 4th DCA 1990) (passenger sitting in seat under which cocaine was concealed); King v. State, 556 So.2d 490 (Fla. 1st DCA 1990) (passenger in car where cocaine locked in trunk); Soler v. State, 547 So.2d 251 (Fla. 4th DCA 1989) (cocaine concealed on floor behind seat of passenger); Pena v. State, 465 So.2d 1386 (Fla.2d DCA 1985) (cocaine wrapped in newspaper in vehicle).
*1152 In like manner, mere proximity to contraband is insufficient to create probable cause of constructive possession. Edwards v. State, 532 So.2d 1311 (Fla. 1st DCA 1988), review denied, 542 So.2d 990 (Fla. 1989). Neither does reasonable cause for the searching of an automobile justify the search of the person of one of the occupants. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). In this case, there is no evidence, direct or circumstantial (see Lewis, 570 So.2d at 348), to create probable cause for any one of the three elements of constructive possession as to Tam. Thus, her motion to suppress should have been granted.
The dissent concludes that we have applied the standard of proof for constructive possession at trial to the facts of this case, rather than the lesser probable cause standard which allows a police officer to make an arrest with only reasonable grounds to believe a person has committed a felony. This is not correct. The cases cited where the proof adduced at trial was insufficient to sustain a conviction for constructive possession are included to demonstrate the need for proof of each of the elements of constructive possession. The same rule, by necessity, applies to probable cause even though the standard is reduced to a reasonable belief. To give rise to probable cause, there must be facts sufficient to create a reasonable belief as to each of the elements of the offense. The facts of this case do not support a reasonable belief as to any one of the elements of constructive possession and, therefore, no arrest was possible.
We note that there were two occupants in the rear seats of the van in closer proximity to the contraband than Tam was. Each of these persons consented to the search of her purse, which produced no contraband, and they in turn were not arrested. Tam would not consent to the search of her purse and she was searched and arrested. It is fair to conclude that the search and arrest of Tam, in fact, was based upon her refusal to consent to search rather than some hypothetical reasonable belief that she had committed a felony.
The dissent concludes that the circumstances of the arrest of Rogers and Tam are the same except that Rogers was the owner and driver of the van and Tam was a passenger. We disagree. The police had specific information as to Rogers' expected activities and that Rogers would have cocaine in his possession. They confirmed, by their investigation and observations, all of that information except the actual presence of contraband, which the dog confirmed. No such information existed as to Tam. Additionally, the dissent cites Dixon v. State, 343 So.2d 1345 (Fla.2d DCA 1977), for the proposition that the presence of contraband in the vehicle gave rise to probable cause as to all of the occupants. In Dixon, however, the vehicle's occupants were, as a group, surrounded by smoke and the smell of marijuana, whereas in this case, we are dealing with an odorless white powder concealed in a pocket of the vehicle. Dixon is not applicable.
Affirmed as to Rogers and reversed as to Tam.
ALTENBERND, J., concurs.
DANAHY, A.C.J., concurs in part and dissents in part with opinion.
DANAHY, Acting Chief Judge, concurring in part and dissenting in part.
I am in full accord with the analysis and disposition in the Rogers case. In the Tam case, I also agree that "mere proximity" is insufficient to create probable cause to arrest for possession of contraband. In Tam's case, however, the police officer had sufficient reason to believe that she was, more likely than not, involved in criminal activity, and more involved than being merely present near the cocaine. Based on the aggregate of the information the officer obtained from the informant, the information from his own independent investigation, and what he further observed at the scene, at the moment the dog uncovered cocaine in the front seat pockets of the van the officer had probable cause to arrest Tam as well as Rogers.
Moreover, I disagree with the conclusion that Tam's refusal to consent to a search *1153 while awaiting the arrival of the police dog was the basis for her arrest. Rather, an objective view of the totality of the circumstances provided the officer with probable cause to arrest Tam before he searched her purse. The officer did testify that he believed he had probable cause to arrest her only when he found the additional cocaine in Tam's purse. But it is of no moment that he mistakenly believed that probable cause arose only at that later time. Under the circumstances here, probable cause had already arisen when the dog discovered the cocaine. Thus, since the officer had probable cause to arrest Tam when the cocaine was found in her seat in the van, he was authorized then to search her purse. Once probable cause to arrest exists, it is immaterial whether the search precedes the arrest or vice versa. Dixon v. State, 343 So.2d 1345 (Fla.2d DCA 1977). This analysis supports the finding of the trial judge and recognizes that the existence of probable cause is measured by an objective standard. The focus is neither on an officer's subjective motivation to arrest nor on his erroneous legal conclusions. Padron v. State, 449 So.2d 811 (Fla. 1984). Notwithstanding Tam's earlier refusal to consent to a purse search, when probable cause later arose, the purse search in the presence of that probable cause and her arrest were proper. In sum, because probable cause existed to arrest both persons at the moment the cocaine was discovered in the vehicle, I concur in the Rogers case but dissent in the Tam case.
Because we review the trial court's denial of Tam's motion to suppress, we decide only if all the facts and circumstances, Cross v. State, 560 So.2d 228 (Fla. 1990), viewed in a light most favorable to the state, provided the officers with a sufficient basis to believe that a felony had been committed and the person about to be arrested was the one who committed it. Carroll v. United States, 267 U.S. 132, 158-59, 45 S.Ct. 280, 287, 69 L.Ed. 543, 554 (1925); State v. Riehl, 504 So.2d 798 (Fla.2d DCA), review denied, 513 So.2d 1063 (Fla. 1987); see also 1 W. LaFave, Search and Seizure  A Treatise on the Fourth Amendment § 3.1(b) (2d ed. 1987) citing Comment, 28 U.Chi.L.Rev. 664, 687 (1961). The question is merely whether the police had reasonable grounds to believe Tam had committed a felony. Blanco v. State, 452 So.2d 520 (Fla. 1984); Benefield v. State, 160 So.2d 706 (Fla. 1964). Had Tam gone to trial, it would have been the job of the prosecutor to convict her by proving, beyond a reasonable doubt, each element of the crime of possession utilizing a constructive possession theory. The law places a very different burden on the officer at the scene of the crime. At Tam's suppression hearing, the officer had but to articulate facts and circumstances which, together with the inferences arising from them, supported a reasonable belief that the crime of possession of cocaine had been committed and that Tam was the person who committed it. "[I]f a constable or other peace officer arrest a person without a warrant, he is not bound to show in his justification a felony actually committed, to render the arrest lawful." Carroll, 267 U.S. at 161, 45 S.Ct. at 288, citing Commonwealth v. Carey, 12 Cush. 246, 251. As "probable cause" implies, we deal with probabilities, not certainties or technicalities, but "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).
Edwards v. State, 532 So.2d 1311 (Fla. 1st DCA 1988), review denied, 542 So.2d 990 (Fla. 1989), is distinguishable on its facts since that case had evidence only of "mere proximity" and the police arrested the defendant solely because of the proximity factor. Further, this proximity factor was extremely attenuated: The defendant stood up after leaning down to speak to a seated friend in a group of people gathered in a public place; when he did so, a baggie of cocaine rocks fell from out of a nearby tree and landed closest to him, about five feet away. The first district held that "[m]ere proximity to contraband found in a public place and in the vicinity of several other people does not warrant a finding that the police officer had probable cause to believe that the person or persons closest *1154 to the contraband possessed it." Id. at 1314.
Unlike Edwards, in the case before us the officer was presented with more circumstances than mere proximity to drugs in a public place. In addition to the detailed and verified information from the informant about the driver, the car, the time and the location, he specified Tam by name and special relationship with Rogers; that the vehicle, driven by her boyfriend, Rogers, would contain contraband packaged in a certain way; and the contraband would be found in the map pockets of the seats. The police verified that the van belonged to Tam's boyfriend and that he had a previous narcotics record. The police then identified Rogers and Tam as driver and front seat passenger, respectively, and observed no other seats in the van. Tam occupied the front passenger seat, within easy reach of the contraband, hidden in the attached compartment of that seat. The majority opinion points out that the informant, although stating that Tam would accompany Rogers, did not implicate her in physical possession of contraband. That is so. But the record also shows that, upon questioning by the officer, the informant admitted that he had not specifically seen Rogers in physical possession of cocaine that evening either. Therefore, I am unable to distinguish between Rogers and Tam on this ground since the informant did not state that he saw either of them in physical possession that evening, but only that the cocaine would be in the seat pockets of the van. Here, the officer arrested only the two people who had a nexus with the contraband as stated by the informant in his detailed and verified tip and who occupied the very seats holding the contraband.
The officer knew from his conversation with the informant that evening that Tam and Rogers were linked, both temporally on the evening in question and by their special relationship. "[J]oint activity by the occupants of a vehicle may furnish sufficient cause to arrest a passenger as a participant in suspected illegal activity engaged in by the driver." People v. Williams, 17 Cal. App.3d 275, 94 Cal. Rptr. 735 (1971). Tam did not show up unexpectedly in Rogers' van that evening, as did the other three occupants. Compare, State v. Brazil, 269 N.W.2d 15 (Minn. 1978) (no probable cause to arrest mere passenger, not named in tip and whose appearance was a surprise, where driver exited car to conduct illegal sale in restaurant as predicted by informant).
Because the circumstances of this case presented more than "mere proximity" and demonstrated to the officer Tam's linkage to Rogers and the cocaine in the van, this case is distinguished from United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). There the Court sustained a finding of no probable cause to arrest a vehicle's front seat passenger, Di Re, where police admitted that at the time of his arrest they had no prior information about him whatsoever; no implication in the crime of knowingly possessing counterfeit ration coupons with the intent to utter them as true; and no circumstances at the scene suggesting present possession of counterfeit ration coupons beyond his mere and unexpected presence in the car where a prohibited coupon transaction took place. The informant who had earlier implicated Di Re's companion, the driver of the car, as the counterfeit-coupon-seller, never, even upon inquiry at the scene of the transaction, implicated Di Re. The only circumstance presented to the police was Di Re's surprise presence in the car. The Court held that this alone was not enough to provide the police with probable cause to arrest. Here, unlike Di Re, there was an aggregate of circumstances known and observed by the officer which constituted more than Tam's mere presence at the scene. Because that is so, I would agree with the trial court's ruling that the officer had probable cause to arrest Tam. Accordingly, I would affirm the Tam case as well as the Rogers case.