839 So.2d 739 (2003)
Alexander BAIN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-1568.
District Court of Appeal of Florida, Fourth District.
January 29, 2003.
Rehearing Denied March 19, 2003.
Carey Haughwout, Public Defender, and Allen J. DeWeese, Assistant Public Defender, West Palm Beach, for appellant.
Charlie Crist, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Appellant pled no contest to trafficking in cocaine over 28 grams, reserving the right to appeal the denial of his motion to suppress the evidence. We affirm.
At the suppression hearing, Deputy Robert Kohl, a K-9 road patrol officer, testified that he received a call that a vehicle had broken down near the 1-95 and 714 interchange in Palm City. He responded to the location and saw two disabled vehicles parked one behind the other off the side of the highway. The deputy spoke to the occupants of the first car. The driver told him that he and his passengers were returning from a water theme park in West Palm Beach when their car overheated. The deputy suggested that they use rainwater from a nearby ditch for the radiator. The driver, however, preferred to use clean water and asked the deputy to go into town to get some for him. The deputy declined and, instead, allowed the driver to use his cell phone to call friends for fresh water.
The deputy then approached the second car. Appellant and another man were *740 standing outside the disabled vehicle. Appellant told the officer that he had run out of gas and called 911 for assistance. He told the officer that he and his passenger had left Miami and were returning to Jacksonville. The officer offered to go into town for gas. Appellant handed the officer an empty gas can but then told the officer that he did not want him to come back; he said he would rather use a tow truck. The officer asked appellant if he had any money, and appellant responded that he had $1000. The deputy became suspicious when appellant said he would rather call a tow truck than have the deputy return with gas. At that point, he asked for identification from appellant and his passenger. The deputy ran a criminal check through dispatch and discovered that appellant had prior drug charges.
The deputy separated the two men and questioned them individually. Appellant said that he was a mason and had been in Miami that weekend looking for work laying block. The passenger said that they had been in Miami just visiting relatives. Because the deputy's suspicions were heightened by the conflicting stories, he asked for permission to search the vehicle for weapons and drugs. Appellant consented. The deputy searched the vehicle's interior and found nothing. He then asked appellant for the keys to search the trunk. At first, appellant denied having the keys. Then, after locating the keys, he told the deputy that he did not want him to search the trunk. This further raised the deputy's suspicions, so he called for backup assistance.
In less than ten minutes backup arrived. According to the deputy, appellant was free to leave during the time he waited for backup officers. He "guessed" that appellant did not leave because his car was out of gas. Appellant testified, however, that the deputy ordered the two men to sit on the ground in front of appellant's car while the deputy called and waited for backup.
When backup arrived, Deputy Kohl took his drug detection dog out of the back of his patrol vehicle and led him around appellant's car. The dog alerted to the trunk area of the car. After the alert, the deputy placed appellant and his passenger in separate police cars. During a patdown of appellant, the deputy found $1,000. The deputy retrieved the keys to the car, unlocked the trunk, and searched it. His search revealed over 177 grams of powdered cocaine inside a black rubber boot.
At the hearing on appellant's motion to suppress, appellant conceded that the initial contact between appellant and the officer was consensual and that the consensual nature of the encounter remained through the consensual search of the car's interior. He argued, however, that he was unlawfully detained or arrested, without reasonable suspicion or probable cause, when he was patted down and placed in the back of the patrol car. On this basis, denial of appellant's motion to suppress was proper. The evidence showed that appellant was not patted down and placed in the patrol car until after the drug dog alerted to the trunk of his disabled vehicle. Once the dog alerted to the presence of illegal drugs, the deputy had probable cause for the search that led to discovery of the cocaine. See State v. Hill, 770 So.2d 280, 282 (Fla. 5th DCA 2000)(holding that police officers had probable cause to believe that suspect's vehicle contained drugs after drug-sniffing dog alerted officers to vehicle); State v. Robinson, 756 So.2d 249 (Fla. 5th DCA 2000)(holding that an alert by a trained police dog provides probable cause for a search).
The exclusionary rule requires the suppression of evidence obtained as a result of an unlawful seizure. Wong Sun v. United *741 States, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Here, where appellant did not argue below that he was unlawfully detained or arrested prior to the drug dog alert on his vehicle, the trial court correctly found that no unlawful search occurred. See United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)(concluding that a dog sniff that discloses only the presence or absence of narcotics "does not constitute a search within the meaning of the Fourth Amendment"); see also City of Indianapolis v. Edmond, 531 U.S. 32, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000)(discussing that a sniff by a dog that simply walks around a car is much less intrusive than a typical search); Cardwell v. State, 482 So.2d 512 (Fla. 1st DCA 1986)("Just as no police officer need close his eyes to contraband in plain view, no police officer armed with a sniff dog need ignore the olfactory essence of illegality.").
On appeal, appellant argues for the first time that the evidence should have been suppressed because he was unlawfully detained when he refused permission to search the trunk of his car and was ordered to sit on the ground to wait for backup police. We do not reach the merits of this argument because it was not raised below. See State v. Klein, 736 So.2d 9 (Fla. 4th DCA 1998)(holding that state failed to preserve claim that search was within the scope of lawful search incident to arrest of passenger by not making that argument to the trial court). In Klein, Judge Klein explained that:
Under section 924.051, Florida Statutes (1997), a criminal appeal may not be taken unless an error has been properly preserved or is fundamental. "Preserved" means that the legal argument presented to the trial court was "sufficiently precise" to fairly apprise the trial court of the argument being made on appeal.
Id. at 10.
Here, had the trial court been "fairly apprised" of appellant's detention argument presented on appeal, it could have weighed appellant's testimony that he was ordered to remain on the scene against the deputy's testimony that appellant was "free to leave" during the time he waited for backup officers. In addition, the trial court could have examined other circumstances which appellant now claims demonstrated an unlawful detention and could have made factual findings concerning them.[1] Because appellant did not assert below that he was unlawfully detained by any police conduct before the dog sniff search, we do not consider this argument on appeal and affirm the denial of his motion to suppress.
AFFIRMED.
POLEN, C.J., and FARMER, J., concur.
NOTES
[1] Appellant argues for the first time on appeal that the consensual encounter escalated into a detention at the point where he refused permission to search the trunk of his car because: (1) his driver's license had been taken by the deputy; (2) his car had been searched; (3) he was pressured to turn over the key to his trunk; (4) he was separated from his companion when questioned; and (5) he was made to sit on the ground to await more police.