**2022 WI App 37**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:  2021AP708-CR

†Petition for Review filed

Complete Title of Case:


STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CATTI J. MEISENHELDER,

DEFENDANT-APPELLANT.†


| | |
|---|---|
| Opinion Filed: | June 15, 2022 |
| Submitted on Briefs: | April 14, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Neubauer, Grogan and Kornblum, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Susan E. Alesia*, assistant state public defender of Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sonya K. Bice*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

June 15, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2021AP708-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019CF126

**IN COURT OF APPEALS**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

CATTI J. MEISENHELDER,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Calumet County: JEFFREY S. FROEHLICH, Judge. *Affirmed*.

Before Neubauer, Grogan and Kornblum, JJ.

¶1    GROGAN, J.   Catti J. Meisenhelder appeals from a judgment entered after she pled no contest to possession of methamphetamine, contrary to WIS. STAT. § 961.41(3g)(g) (2019-20).  Meisenhelder contends the circuit court erred when it denied her motion to suppress, which alleged that police lacked probable cause to

search a small metal canister on her keychain while searching her purse pursuant to her arrest for retail theft. She believes the search violated the Fourth Amendment[1] because, according to her, the canister was too small to contain a weapon or any evidence of a crime. We affirm.

## I. BACKGROUND

¶2 In July 2019, a Walmart loss prevention officer caught Meisenhelder stealing merchandise. Walmart notified Appleton Police about the retail theft, and Officer Jordan Woelfel and Officer Derek Anderson were dispatched to the store. When the officers arrived, they saw that Walmart loss prevention officers had detained Meisenhelder in the loss prevention office. One of the loss prevention officers reported that Meisenhelder had concealed two items in her purse—a bottle of mouthwash and an eyeliner, worth a total of $18.18—and had attempted to leave the store without paying for them. These two items were on the desk in the office when the police arrived.

¶3 The police told Meisenhelder they would need to search her purse to see if there were any additional stolen items inside, and Meisenhelder consented to the search. While searching the purse, one of the officers found a metal canister about the size of a "12 gauge shotgun shell" attached to her keys. The canister, which was "slightly wider in diameter … than a 12 gauge shotgun shell" was opaque, making it impossible to view its contents. The officer unscrewed the canister cap and found a bag with suspected methamphetamine inside. Police then read Meisenhelder her *Miranda*[2] rights, and she subsequently stated that she

---

[1] U.S. CONST. amend. IV.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

believed the substance in the canister was methamphetamine. Police did not find any additional stolen merchandise inside the purse. When asked whether she had any other items on her person the police needed to know about, she gave the police several "dime-sized bags from her back pants pocket[,]" which contained residue suspected to be from methamphetamine. The officers arrested Meisenhelder, and the State charged her with misdemeanor retail theft, possession of methamphetamine, and possession of drug paraphernalia.

¶4      Meisenhelder filed a motion seeking to suppress "any and all evidence obtained in violation of her constitutional rights, including but not limited to any controlled substances located in the purple vial-sized container with a screw-on top and any derivative evidence, including all statements made after the unlawful search."[3]

¶5      The circuit court denied the motion, relying on *State v. Sykes*, 2005 WI 48, ¶2, 279 Wis. 2d 742, 695 N.W.2d 277, which upheld the search of Sykes' wallet incident to a lawful arrest. The circuit court here concluded that the search of Meisenhelder's purse was "carried out [as] a valid search incident to arrest[.]" Subsequently, Meisenhelder entered into a plea bargain with the State where she agreed to plead no contest to the possession charge, and the other two charges would be dismissed and read in.

¶6      The circuit court accepted Meisenhelder's plea and withheld sentence. It placed her on eighteen months' probation and allowed her to be discharged early if approved by her agent. As a condition of probation, the court imposed but stayed

---

[3] Meisenhelder refers to the canister as a "vial." However, having observed the "vial" in our review of the bodycam video, we refer to the "vial" as a "canister" throughout this opinion, as we believe "canister" is a more accurate description based on the item's metal material, size, and dimensions.

four months of jail time with Huber release privileges. Judgment was entered. Meisenhelder now appeals.

## II. STANDARD OF REVIEW

¶7 An order granting or denying a motion to suppress evidence presents a question of constitutional fact, which requires a two-step analysis on appellate review. *State v. Asboth*, 2017 WI 76, ¶10, 376 Wis. 2d 644, 898 N.W.2d 541. "First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." *State v. Robinson*, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786 N.W.2d 463 (internal citations omitted).

## III. DISCUSSION

¶8 Meisenhelder argues that the police did not have probable cause to open the small metal canister attached to her keychain during the search of her purse because, she asserts, it was too small to contain a weapon or evidence of a crime. Meisenhelder relies on *State v. Sutton*, 2012 WI App 7, 338 Wis. 2d 338, 808 N.W.2d 411 (2011), where this court held the warrantless search of vials police found during a protective search of Sutton's car during a traffic stop violated the Fourth Amendment. *Id.*, ¶¶2, 7-11. The State responds that the search of Meisenhelder's canister did not violate the Fourth Amendment because it was a search incident to arrest, and Meisenhelder was within reaching distance of her purse. The State cites to numerous cases concluding that when a suspect is searched incident to arrest, police can search anything on "'the arrestee's person'" and "'the area from within which [the suspect] might gain possession of a weapon or destructible evidence.'" *See, e.g.*, *United States v. Hill*, 818 F.3d 289, 295 (7th Cir.

2016) (alteration in original; citations omitted). We conclude the law permitted the search of the canister in Meisenhelder's purse.

### A. Fourth Amendment and Search Incident to Arrest Principles

¶9 The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and that "no Warrants shall issue, but upon probable cause[.]" U.S. CONST. amend. IV. Article I, section 11 of the Wisconsin Constitution likewise provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated" and that "no warrant shall issue but upon probable cause[.]" WIS. CONST. art. I, § 11.

¶10 "A [search or] seizure conducted without a valid warrant is presumptively unreasonable." *State v. Brereton*, 2013 WI 17, ¶24, 345 Wis. 2d 563, 826 N.W.2d 369 (citing *United States v. Ross*, 456 U.S. 798, 824-25 (1982)). The "ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Whether a search is exempt from the warrant requirement involves balancing "the degree to which it intrudes upon an individual's privacy and … the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999).

¶11 In balancing these interests, courts have concluded that warrantless searches may comport with the Fourth Amendment if a search falls within a recognized exception. *See, e.g.*, *Kentucky v. King*, 563 U.S. 452, 459 (2011). One well-established exception to the Fourth Amendment includes the search incident

to a lawful arrest. *See **Riley v. California***, 573 U.S. 373, 382 (2014); ***State v. Bauer***, 2010 WI App 93, ¶6, 327 Wis. 2d 765, 787 N.W.2d 412.

¶12 The law permits a warrantless search incident to arrest because searching the arrested person and the area within her reach is recognized as reasonable. *See **Chimel v. California***, 395 U.S. 752, 762-63 (1969). ***Chimel*** explained:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

***Id***. An arrestee has lessened privacy interests because an arrest "significantly diminish[es]" the suspect's privacy interests. ***Riley***, 573 U.S. at 386; ***Mincey v. Arizona***, 437 U.S. 385, 390-91 (1978). The reasonableness of the search-incident-to-arrest exception includes closed containers found on an arrestee's person, *see* ***United States v. Robinson***, 414 U.S. 218, 236 (1973), and since ***United States v. Robinson***, courts have repeatedly recognized as lawful the searching of objects found on an arrestee's person. *See, e.g.*, ***United States v. Rodriguez***, 995 F.2d 776 (7th Cir. 1993) (allowing search of address book); ***United States v. Molinaro***, 877 F.2d 1341 (7th Cir. 1989) (allowing search of wallet). Thus, the warrantless search

of an arrestee's person and items found on the arrestee's person does not violate the Fourth Amendment.[4]  The Supreme Court directs that "a search incident to the arrest requires no additional justification[,]" **Robinson**, 414 U.S. at 235, because "the fact of arrest alone justifies the search." **Thornton v. United States**, 541 U.S. 615, 631-32 (2004) (Scalia, J., concurring in judgment).

¶13     The search-incident-to-arrest exception also permits police to search items not actually located *on* the person but also in the area within the arrestee's reach.  "The scope of a search incident to arrest is confined to 'the area from within which [the suspect] might gain possession of a weapon or destructible evidence[.]'" **Sykes**, 279 Wis. 2d 742, ¶20 (first alteration in original; citation omitted).  A search may precede an arrest so long as the officer had probable cause to arrest prior to the search.  **Id.**, ¶2 (holding search was lawful because "law enforcement had probable cause to arrest … for a crime prior to the search").

### B. Application

¶14     The search at issue here arose incident to Meisenhelder's arrest for stealing items at a Walmart store, and the search occurred in Walmart's loss prevention office.  Meisenhelder, relying primarily on **Sutton**, 338 Wis. 2d 338, contends that the search of the canister conducted incident to her arrest violated her Fourth Amendment rights.  In **Sutton**, this court held that police needed a warrant to search two "cylindrical and opaque" vials discovered in the map pocket of Sutton's car during a protective search after a traffic stop for failure to wear a seatbelt.  **Id.**, ¶¶5, 11.  Police searched Sutton's car because they saw the car make

---

[4] This general principle does not apply to a cell phone, which the United States Supreme Court declared may not be searched under the search-incident-to-arrest exception.  *See* **Riley v. California**, 573 U.S. 373, 385-86 (2014).

"two distinct rocking motions"—movement the police thought could be Sutton trying to "retrieve or conceal a weapon[,]" which caused them to fear for their safety. *Id.*, ¶4. *Sutton* held that the search of the car itself complied with the Fourth Amendment because it was reasonable for the police to make sure "there was no gun or other weapon" in the car. *Id.*, ¶8. But *Sutton* went on to conclude that because the cylinders were too small to house a weapon, and the police did not have "'probable cause to believe there [was] a connection between the [opaque cylinders] and criminal activity[,]'" *id.*, ¶¶10-11 (first and second alterations in original; citation omitted), the search of the cylinders violated the Fourth Amendment. *Sutton* decided that Sutton's suppression motion should have been granted and reversed his judgment of conviction. *Id.*

¶15     *Sutton* does not control here. First, the search in *Sutton* was not based on the search-incident-to-arrest exception. Rather, the police conducted a protective search based on the officer's concern that Sutton may have had a weapon in the car and "*because Sutton was not under arrest and could freely return to [his vehicle]*." *Id.*, ¶8. Second, the search in *Sutton* involved concerns only about a weapon, and the cylinders involved in *Sutton* were too small to house a weapon. Thus, the officers' "legitimate reason to be concerned that there might be a gun or other weapon[,]" which justified looking in the vehicle itself, did not apply to the cylinders. *Id.* When the officers found the cylinders in the car's map pocket, the analysis shifted to the plain-view exception and whether probable cause existed to reasonably believe that the cylinders "were connected to 'criminal activity.'" *Id.*, ¶9.

¶16     Here, it is undisputed that the police had probable cause to arrest Meisenhelder for retail theft. The search of the contents of her purse constituted a lawful search incident to arrest. It is of no import that the probable cause for the

8

retail theft arrest also led to drug-related charges being filed. *See Sykes*, 279 Wis. 2d 742, ¶¶22, 34 ("That the arrest led to drug-related charges being filed, not to a charge for criminal trespass, does not negate that probable cause to arrest existed prior to the search."). The search-incident-to-arrest exception permitted the police to search both Meisenhelder's person and objects within her reach. *See Chimel*, 395 U.S. at 762-63; *Sykes*, 279 Wis. 2d 742, ¶¶14, 21. The circuit court found that Meisenhelder's purse was "in the immediate area and used in the commission of the alleged offense." That finding, based on this court's viewing of the officers' bodycam video of the entire incident, is not clearly erroneous. Meisenhelder was not handcuffed while the officer searched her purse, and she was located within reaching distance of her purse in Walmart's very small loss prevention office.[5] It is undisputed that Meisenhelder had placed the items she attempted to steal in her purse—she was using her purse to conceal stolen merchandise. We are further not convinced that the presence of four officers in the loss prevention office with Meisenhelder somehow negated Meisenhelder's ability to reach her purse. *See Arizona v. Gant*, 556 U.S. 332, 343 (2009) (search incident to arrest permissible when "arrestee is unsecured and within reaching distance … at the time of the search").

¶17 Additionally, the bodycam video provided this court with the opportunity to see the actual size of the canister. Although the canister is small—described as the size of a twelve-gauge shotgun shell but a little wider—it is not so

---

[5] Meisenhelder also relies on *United States v. Maddox*, 614 F.3d 1046 (9th Cir. 2010), but *Maddox* involved much different facts. It involved the search of a keychain in Maddox's vehicle after Maddox had been handcuffed and placed in the police squad car. *Id.* at 1047. The court held that "this was *not* a search of Maddox's person incident to arrest" because after Maddox was handcuffed and placed in the squad car, the keychain was no longer on his person or in his immediate control. *Id.* at 1048. Additionally, *Maddox* is not binding on this court. *See State v. Mechtel*, 176 Wis. 2d 87, 95, 499 N.W.2d 662 (1993) ("State courts are not bound by the decisions of the federal circuit courts of appeal or federal district courts.").

small that it could not have contained additional stolen merchandise. At the suppression hearing, when asked whether the cylinder was too small to hide stolen merchandise, the officer testified, "you can put very small things into that vial"[,] and "[i]t can be used to … hold a lot of small things." Having viewed the size of the cylinder, it appears to be of sufficient size so as to have hidden a variety of small objects.

## IV. CONCLUSION

¶18 The circuit court correctly denied the suppression motion here because the search of Meisenhelder's purse and its contents, including the small metal canister attached to her keychain, constituted a valid search incident to her arrest for retail theft. When police have probable cause to arrest a person, the law recognizes as reasonable the search of the person and anything within her reach. *See **Chimel***, 395 U.S. at 762–63. The purse was within Meisenhelder's reach, and it is undisputed that she used her purse to conceal merchandise she attempted to steal. The search of the canister, which could have contained stolen merchandise, was not unreasonable.

*By the Court.*—Judgment affirmed.