COURT OF APPEALS
DECISION
DATED AND FILED

November 22, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1437-CR**

Cir. Ct. No. 2021CF17

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

COLIN TAYLOR THEOBALD,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Sheboygan County: REBECCA L. PERSICK, Judge. *Reversed and cause remanded with directions*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Colin Taylor Theobald appeals from a judgment entered after he entered no contest pleas to two drug possession charges and two felony bail-jumping charges. On appeal, he contends the circuit court erred when it denied his suppression motion. He asserts that the police lacked probable cause to search him following a traffic stop. We reverse and remand with directions.

## I. BACKGROUND

¶2 In January 2021, Sheboygan Police Officer Lucas Haese observed a car driving with a burnt-out registration lamp and conducted a traffic stop. Theobald was the driver and sole occupant in the car. Because Haese knew about Theobald's drug history, Haese called Officer Taylor and her K-9 partner to the scene. While Haese was writing Theobald a warning for the burnt-out lamp, Taylor had Theobald exit his car before having the K-9 conduct a drug sniff of the exterior of the car. The K-9 alerted to the driver's side door,[1] and as a result, the police searched Theobald's car. No drugs were found in the car.

¶3 The officers proceeded to conduct a search of Theobald's person and found a small clear baggie with a substance believed to be methamphetamine. Police arrested Theobald and searched him again. The officers discovered a pill bottle in his left pants pocket that contained five different kinds of controlled substances: (1) One dose of fluoxetine hydrochloride (10 mg), which is a prescription medication; (2) a small piece of Suboxone (12 mg/3 mg), which is a Schedule III controlled substance; (3) one half of a sildenafil citrate (100 mg),

---

[1] The Complaint stated that the K-9 alerted "at the driver's side door" of Theobald's car. The stipulated facts presented to the circuit court at the suppression hearing stated that the K-9 alerted to the "driver's passenger side of the vehicle." This court presumes this means the driver's door. Regardless, even if the alert was to another door of the vehicle, the result of our decision would be the same.

which is a prescription medication; (4) two doses of clonazepam (0.5 mg), which is a Schedule IV controlled substance; and (5) three doses of Vyvanse (50 mg), which is a Schedule II controlled substance. At the time of his arrest, Theobald was out on bond for another pending drug possession case.

¶4      The State charged Theobald with nine counts: (1) possession of methamphetamine; (2) possession of a controlled substance (Vyvanse); (3) possession of a controlled substance (Suboxone); (4) possession of a controlled substance (clonazepam); (5) possession of an illegally obtained prescription (fluoxetine hydrochloride); (6) possession of an illegally obtained prescription (sildenafil citrate); (7) felony bail jumping (failing to comply with bond condition to not possess illegal drugs); (8) felony bail jumping (failing to comply with bond condition to not possess any controlled substance without valid prescription); and (9) felony bail jumping (failing to comply with bond condition to not commit any new crimes).

¶5      Theobald entered not guilty pleas and filed a motion seeking to suppress the evidence discovered during the search. He argued that the police lacked reasonable suspicion or probable cause to search his person. Theobald conceded that the K-9 alert on his car provided probable cause to search the car but contends that when the police failed to find any drugs in his car, that should have ended the matter. No one testified at the suppression hearing. Instead, the parties presented the circuit court with the following stipulated facts: An officer stopped Theobald's vehicle for a burnt-out registration lamp. The officer "was aware of the defendant's drug history," so he called a K-9 officer. The K-9 arrived, and police had Theobald exit the vehicle. The K-9 alerted on the driver's side of the vehicle. Officers conducted a search of the defendant's vehicle but did not find any evidence. Officers "conducted a search of the defendant and located the various drugs that

3

he's currently charged with, the several prescription drugs as well as the methamphetamine." The items were "located on his person inside of his jacket in an internal pocket[.]"

¶6 The circuit court denied the suppression motion, reasoning that because Theobald had recently exited the car, the K-9 alerting on the car gave officers probable cause to search Theobald. It relied on *State v. Secrist*, 224 Wis. 2d 201, 589 N.W.2d 387 (1999), which held that: "the odor of a controlled substance provides probable cause to arrest when the odor is unmistakable and may be linked to a specific person or persons because of the circumstances in which the odor is discovered or because other evidence links the odor to the person or persons." *Id.* at 204. In *Secrist*, a police officer smelled the strong odor of marijuana emanating from the car that Secrist, the sole occupant, was driving. *Id.* at 204-06. The officer asked Secrist to step out of his car and immediately arrested him for possession of marijuana. *Id.* at 205. After the arrest, the police searched Secrist's car incident to arrest and found marijuana and drug paraphernalia. *Id.* The circuit court concluded *Secrist* supported the warrantless search of Theobald.

¶7 After the circuit court denied his suppression motion, Theobald entered into a plea bargain where he pled no contest to counts one, two, seven, and eight, and the remaining counts were dismissed and read in. The court withheld sentence and placed Theobald on probation for four years.[2] It also imposed six

---

[2] The circuit court imposed four years of probation on counts one, seven, and eight and one year of probation on count two.

months of conditional jail time upfront and stayed another six months of conditional jail time.[3] Theobald appeals.

## II. DISCUSSION

¶8 The only issue on appeal is whether the circuit court erred in denying Theobald's suppression motion. "An order granting or denying a motion to suppress evidence presents a question of constitutional fact, which requires a two-step analysis on appellate review." *State v. Meisenhelder*, 2022 WI App 37, ¶7, 404 Wis. 2d 75, 978 N.W.2d 551, *review denied* (WI Oct. 11, 2022) (No. 2021AP708-CR). "First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." *Id.* (quoted source omitted).

¶9 The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and that "no Warrants shall issue, but upon probable cause[.]" U.S. CONST. amend. IV. Article I, section 11 of the Wisconsin Constitution likewise provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated" and that "no warrant shall issue but upon probable cause[.]" WIS. CONST. art. I, § 11. In determining whether

---

[3] The Record reflects that Theobald's probation was revoked shortly after his sentence for violating probation conditions. As a result, the circuit court imposed a sentence of eighteen months' initial confinement followed by twenty-four months' extended supervision on count one, costs on count two, and two years' initial confinement followed by three years' extended supervision on the bail-jumping counts. These sentences were concurrent to each other but consecutive to his companion drug possession case. Theobald's appeal raises a challenge only to the suppression order.

probable cause to search exists, "the relevant inquiry is whether evidence of a crime will be found." *Secrist*, 224 Wis. 2d at 209. "Probable cause to arrest requires evidence that would lead a reasonable police officer to believe that the person to be arrested has committed or is committing a crime." *Id.* at 214.

¶10 We look to the totality of the circumstances and what a reasonable officer would believe based on the information he had at the time. *Id.* at 218. The officer's training and experience is also to be considered in the analysis. *Id.* "Whether a search is exempt from the warrant requirement involves balancing 'the degree to which it intrudes upon an individual's privacy and ... the degree to which it is needed for the promotion of legitimate governmental interests.'" *Meisenhelder*, 404 Wis. 2d 75, ¶10 (omission in original; citation omitted).

¶11 In looking at the facts as stipulated to here, we conclude that the officers lacked probable cause to search Theobald's person. At the time the officers searched Theobald without a warrant, they needed to have reason to believe that evidence of a crime would be found. What they knew at the time of the search was that the K-9 had alerted to the driver's door of an empty car and that a search of the car resulted in no evidence of drugs or contraband. These facts do not provide probable cause to search Theobald's person.

¶12 Although there is no doubt that the K-9 alert provided probable cause to search the car, it is not enough to extend the search to a person who was not in the car when the K-9 alerted. The automobile exception allows officers to search a vehicle without a warrant if the officers have probable cause to believe the vehicle contains contraband because there is a lesser expectation of privacy in a vehicle. *State v. Marquardt*, 2001 WI App 219, ¶¶28, 31, 247 Wis. 2d 765, 635 N.W.2d 188. Police still need either a warrant or an exception to the warrant requirement to

conduct a search of the person. *See United States v. Di Re*, 332 U.S. 581, 587 (1948) (probable cause to search a car did not justify a body search of a passenger); *Wyoming v. Houghton*, 526 U.S. 295, 303 (1999) (reaffirming *Di Re* and emphasizing the "unique, significantly heightened protection afforded against searches of one's person").

¶13 The State argues that because Theobald had recently exited the car, the K-9 alert gave them probable cause to search Theobald. The State has failed to provide any legal authority to support its argument. Other courts have rejected the argument that a K-9 alert on an empty vehicle provides probable cause to search former occupants. *See State v. Smith*, 729 S.E.2d 120, 123-126 (N.C. Ct. App. 2012) (rejecting the argument that "a drug dog's positive alert to a motor vehicle while defendant, a former passenger within the motor vehicle, was outside the vehicle constitutes probable cause to search defendant's person without a search warrant"); *see also Bryant v. State*, 779 So. 2d 464, 465 (Fla. Dist. Ct. App. 2000) (concluding that a dog alert on unoccupied vehicle, followed by unfruitful search of the vehicle, did not supply basis to search the driver).

¶14 We are unable to locate any Wisconsin case that authorizes the search of a person under the circumstances presented here. The State suggests *Secrist* supports its position or that a logical extension of *Secrist* supports the warrantless search of Theobald. We disagree. *Secrist* does not provide legal support to search Theobald's person because the facts in this case are not the same as the facts in *Secrist*. *Secrist* involved the officer smelling the unmistakable, strong odor of marijuana coming from the car with Secrist in it. *Id.*, 224 Wis. 2d at 204. The search at issue in *Secrist* was of Secrist's *car* based on the odor, not a search of his person. *Id.* at 206-07. The evidence seeking to be suppressed in *Secrist* was the evidence the officers found in Secrist's *car*. *Id.* at 203-04. Further, *Secrist* included

evidence of the officers' experience and training in the odor of marijuana, which is absent from the Record before us. *See id.* at 218-19. There is a significant difference between searching a vehicle and arresting and searching a person. *See* 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.1(b) (6th ed. 2022) ("This distinction [between probable cause to search a place and probable cause to arrest an individual] is a critical one, and ... there may be probable cause to search without probable cause to arrest, and vice-versa.").

¶15 The State makes the alternative argument that the search of Theobald's person was justified under the search-incident-to-arrest exception to the Fourth Amendment. We disagree. Probable cause to arrest exists when the totality of the circumstances would lead a reasonable police officer to believe a person has committed or is committing a crime. *Secrist*, 224 Wis. 2d at 212. Had the search of the car resulted in the discovery of illegal drugs, the police would have had probable cause to arrest Theobald. But that is not what happened here. This was a traffic stop for an equipment violation. A K-9 alert to the car yielded no drugs or contraband. The K-9 did not alert to Theobald—which would have given the police probable cause to search his person. The fact that a search ultimately confirms an officer's suspicion is not relevant to the Fourth Amendment analysis. The Fourth Amendment does not authorize arrest of a person (and search incident to that arrest) solely based on suspicion or a hunch. *State v. Moore*, 2023 WI 50, ¶8, 408 Wis. 2d 16, 991 N.W.2d 412.[4] The only evidence relevant for our purpose is the facts that

---

[4] Theobald's case is also distinguishable from *State v. Moore*, 2023 WI 50, 408 Wis. 2d 16, 991 N.W.2d 412, where our supreme court held that police officers' credible testimony that they both detected the overwhelming smell of marijuana and sufficiently linked that illegal activity to the defendant satisfied the probable cause standard to arrest. *Id.*, ¶¶11-12. In Theobald's case, no police officer testified at the suppression hearing.

the police knew before they undertook the search. 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 5.4(a) (6th ed. 2022) (A "search may not be justified as being incident to the subsequent arrest if the arrest is in turn based upon the fruits of the prior search. Such bootstrapping would render the Fourth Amendment a nullity.").

### III.  CONCLUSION

¶16     Based on the foregoing, we conclude that the circuit court erred in denying Theobald's suppression motion. We reverse that decision and remand with directions to the circuit court to grant Theobald's motion and suppress the evidence discovered during the unconstitutional search of Theobald's person.

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).